UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                   :
7 WEST 21 LI LLC,                                :
                                                   :
                        Petitioner,            :
                                                   :      20 Civ. 279 (JPC)
                    -v-                       :
                                                 :         OPINION
CLEMENT MOSSERI,                   :      AND ORDER
                                                 :
                       Respondent.        :
                                                 :
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

This summary proceeding to recover possession of real property was commenced by Petitioner 7 West 21 LI LLC ("Petitioner") in New York City Civil Court, County of New York, Housing Part F. Dkt. 52 ("Chancas Declaration") ¶ 4. Petitioner, the owner and landlord of Apartment #1708, 7 West 21st Street, New York, New York 10010 (the "Premises"), seeks to recover possession of the Premises from Respondent Clement Mosseri, the tenant to whom the Premises had been rented. *See* Chancas Declaration, Exh. A at 6-9 ("Petition"). Petitioner further seeks money damages for rent due and for the fair value of use and occupancy during the period after the alleged termination of Mosseri's lease. *Id.* On January 13, 2020, Mosseri removed this proceeding to federal court, alleging it to fall within this Court's subject matter jurisdiction because it raises a federal question. Dkt. 2 ("Notice of Removal") ¶ 1. Petitioner now moves to remand the case to state court on the grounds that this Court lacks subject matter jurisdiction. Dkt. 51.[1]

---

[1] Petitioner previously moved to remand on the grounds that Mosseri's removal to federal court was untimely. *See* Dkt. 37. On July 18, 2021, the Court denied that motion, but noted its "serious concern as to whether it has subject matter jurisdiction to adjudicate this dispute." Dkt. 43 at 10; *see Valentin v. Dollar Tree Stores, Inc.*, No. 21 Civ. 3647 (MKV), 2021 WL 2852039, at *1 (S.D.N.Y. July 8, 2021) ("[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*." (alteration in original) (quoting

For the reasons that follow, the Court agrees that it lacks subject matter jurisdiction over this proceeding and therefore remands it to New York City Civil Court, County of New York, Housing Part.

## I. Discussion

Mosseri cites 28 U.S.C. § 1331 as the basis for this Court's jurisdiction. Notice of Removal ¶ 1. Under that provision, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. As the Supreme Court has explained, section 1331 grants a district court jurisdiction over only "those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr. of S. Cal.*, 463 U.S. 1, 27-28 (1983). The propriety of Mosseri's removal of this proceeding to this Court depends on whether it satisfies either of the two conditions set forth in *Franchise Tax Board*. The Court must therefore remand for lack of jurisdiction unless either the Petition is brought under a cause of action created by federal law or a substantial question of federal law must necessarily be resolved to decide whether Petitioner is entitled to the relief sought in the Petition.

**A. Federal Cause of Action**

The proceeding clearly fails to meet the first of these two conditions. Through the Petition, Petitioner brings a summary proceeding to recover possession of real property from a holdover tenant. *See* Petition, Dkt. 52-1 at 6-9; *see also* Chancas Declaration ¶ 4. That cause of action is created by New York law, not by federal law. *See generally* N.Y. Real Prop. Acts. Law art. 7.

---

*Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000))). The instant motion to remand for lack of subject matter jurisdiction followed.

2

Among other matters, Article 7 of the New York Real Property Actions and Proceedings Law, titled "Summary Proceeding to Recover Possession of Real Property," sets forth the courts in which jurisdiction exists for such proceedings to be maintained, *id.* § 701(1); the appropriate venue for such proceedings to be brought, *id.* § 701(2); the category of case into which such proceedings fall, *id.* § 711; the information that must be included in petitions commencing such proceedings, *id.* § 741; the elements that must be proven to maintain such proceedings, *id.* § 711(1); the procedures by which any triable issues of fact must be resolved, *id.* § 745; the nature of the final judgment to be entered in such proceedings, *id.* §747; and the procedures for issuing and executing warrants to evict the tenant in possession of property at the conclusion of such proceedings, *id.* § 749. Consequently, a provision of New York law, not federal law, creates the cause of action under which the Petition proceeds: "A special proceeding may be maintained under this article . . . [if] the tenant continues in possession of any portion of the premises after the expiration of his term, without the permission of the landlord . . . ." *Id.* § 711(1). Furthermore, a summary proceeding under Article 7 encompasses all forms of relief sought in the Petition, not merely the recovery of possession itself. *See id.* § 741(5) (providing that a petition may seek money damages in addition to seeking possession of the property in dispute). Thus, because the Petition is brought under a cause of action created by New York law, it cannot present a federal question as a cause of action created by federal law.

**B. Necessary Federal Issue**

Even a cause of action created by state law may present a federal question, however, if the state-law claims "implicate significant federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). For a state-law claim to implicate significant federal issues, "the question is, does a state-law claim necessarily raise a stated federal issue, actually

3

disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314. For reasons that follow, because proving facts that would entitle Petitioner to relief would not "necessarily raise a stated federal issue," *id.*, the Court cannot exercise jurisdiction over this proceeding on the grounds that the Petition "implicate[s] significant federal issues," *id.* at 312.

As noted, the New York Real Property Actions and Proceedings Law permits the maintenance of a summary proceeding to recover possession of real property if "the tenant continues in possession of any portion of the premises after the expiration of his term, without the permission of the landlord." N.Y. Real Prop. Acts. Law § 711(1). Thus, to prevail in the summary proceeding, Petitioner must prove that Mosseri is its tenant, that his tenancy has expired, and that he remains in possession of the Premises without Petitioner's permission. *See Perrotta v. W. Reg'l Off-Track Betting Corp.*, 469 N.Y.S.2d 504, 505 (App. Div. 1983) ("To maintain a summary holdover proceeding a landlord must allege and prove that, as of the time the proceeding is commenced, the tenant remains in possession beyond the expiration of his term."); *LaManna v. DiDonato*, 842 N.Y.S.2d 674, 675 (App. Term 2007) ("[I]t nevertheless remained landlord's burden to prove his claim that the parties whom he sought to remove were month-to-month tenants, not merely contract vendees in possession, that their tenancy was terminated, and that they held over after the termination of their tenancy without landlord's permission."); *see also* Rasch's New York Landlord and Tenant, Including Summary Proceedings § 30:1 (2021-2022) ("The Real Property Actions and Proceedings Law provides, that a special proceeding may be maintained under Article 7 thereof to remove a tenant . . . by alleging and proving that (a) the party sought to be removed is a tenant, (b) who is in possession of any portion of the real property involved, and (c) who holds over after the expiration of his term, (d) without the landlord's permission . . . .").

Because the New York Real Property Actions and Proceedings Law is a New York statute, not a federal statute, the proper interpretation and application of section 711(1) is a question of New York law, not of federal law. Thus, determining whether the allegations in the Petition would (if proven) satisfy the elements set forth in section 711(1) does not itself raise a federal issue.

Nonetheless, the application of a state law may give rise to federal jurisdiction if some question of federal law must be resolved in order to establish the allegations that themselves entitle the plaintiff to relief under state law. *See, e.g.*, *Grable & Sons*, 545 U.S. at 314-15 (finding federal question jurisdiction to exist over a plaintiff's state-law action to quiet title because the plaintiff "premised its superior title claim on a failure by the IRS to give it adequate notice, as defined by federal law"); *Franchise Tax Bd.*, 463 U.S. at 14 (finding federal question jurisdiction to exist over a plaintiff's state-law declaratory judgment action because state law required the existence of an "actual controversy relating to the respective rights and duties of the parties" (internal quotation marks omitted), and that controversy was alleged to exist under federal law). Thus, even though Petitioner proceeds under a cause of action created by state law, federal question jurisdiction might still exist were some provision of federal law to govern one of the elements set forth in section 711(1). The Petition does not itself plead that any of the allegations entitling the Petitioner to relief depend on any provision of federal law. But under the artful-pleading doctrine, the Petition's failure to state any federal issue itself would not preclude federal question jurisdiction if the Petition "omit[ed] to plead necessary federal questions." *Marcus v. AT&T Corp.*, 138 F.3d 46, 55 (2d Cir. 1998). No allegation in the Petition actually does rely on any provision of federal law, however, and therefore this Court does not possess jurisdiction over this case on the grounds that the Petition "implicate[s] significant federal issues." *Grable & Sons*, 545 U.S. at 312.

### 1. The Expiration of Mosseri's Tenancy

The most legally complex allegation in the Petition concerns the alleged expiration of Mosseri's tenancy. Mosseri, the Petition alleges, "defaulted in fulfilling his obligations pursuant to the aforesaid written rental agreement and in the manner specified in the Notice to Cure." Petition ¶ 6, Dkt. 52-1 at 7. "As a result of said default," the Petition further alleges, Mosseri "was served with a Notice to Cure." *Id.* ¶ 7, Dkt. 52-1 at 7. The Notice to Cure, in turn, identified two alleged defaults under the lease that Mosseri needed to cure. *See generally* Chancas Declaration, Exh. A at 10-12 ("Notice to Cure"). First, it informed Mosseri:

> [Y]ou are violating a substantial obligation of your tenancy, in that you have failed to comply with the annual re-certification process as required by the Rider to Lease Financed by New York State Housing Finance Agency Using Tax Exempt Bond Proceeds and Benefitting from Low-Income Housing Tax Credits which is attached to and made a part of your lease.

Notice to Cure at 1, Dkt. 52-1 at 10. Second, it alleged that Mosseri "[has] refused to renew the lease as provided for by law." *Id.* at 2. Dkt. 52-1 at 11. Neither default, the Petition alleges, was cured. Petition ¶ 8, Dkt. 52-1 at 7. Consequently, "[a]t least seven (7) days before [January 26, 2019], the tenant was served in the manner provided for by law with a Notice of Termination in writing." *Id.* ¶ 10, Dkt. 52-1 at 7. That Notice of Termination, in turn, informed Mosseri that "your tenancy is hereby terminated effective January 26, 2019 for the reasons that you have failed to comply with the Notice to Cure." Chancas Declaration, Exh. A at 15. Thus, the Petition concludes, "[t]he term for which the tenant rented said premises expired on January 26, 2019." Petition ¶ 9, Dkt. 52-1 at 7. In short, the Petition alleges that Mosseri both violated the lease and failed to renew the lease, and that for those two reasons, and his failure to remedy them, his tenancy of the Premises expired.

Although legally complex, these allegations do not necessarily raise a question of federal law, because New York law alone governs the termination of a tenancy under either of the two

6

theories suggested by the Petition.  First, under New York law, "[i]f a clause in a lease provides that the lease cannot endure beyond the time when a contingency happens, it creates a conditional limitation upon the occurrence of which the lease automatically expires" in the sense employed by section 711(1) of the Real Property Actions and Proceedings Law.  *Perrotta*, 469 N.Y.S.2d at 505. Thus, New York law allows a lease to provide that a tenancy will terminate because the tenant has violated that lease.  The obligation that Mosseri allegedly violated, in turn, was imposed directly by the lease.  The lease contained a "Rider to Lease Financed by New York State Housing Finance Agency Using Tax Exempt Bond Proceeds and Benefiting from Low-Income Housing Tax Credits," Dkt. 7-3 at 2-4 (the "Rider"), which provided that "Tenant must . . . annually recertify Tenant's Household income prior to the commencement or renewal of the Lease's term," *id.* at 2, Dkt. 7-3 at 3.  Furthermore, the Rider provided that a tenant's failure to recertify terminates the tenancy:  "Tenant's refusal to comply with a request for information related to income and eligibility requirements shall be deemed a violation of a substantial obligation of tenancy and constitute cause for immediate termination of the lease."  *Id.*  The lease is a contract, and its construction is governed by ordinary principles of New York contract law.  *George Backer Mgmt. Corp. v. Acme Quilting Co.*, 385 N.E.2d 1062, 1065 (N.Y. 1978) ("[A] lease is subject to the rules of construction applicable to any other agreement.").  New York law therefore governs both the application of the lease to Mosseri's conduct and the legal effect of lease violations on the term of Mosseri's tenancy.  And because New York contract and property law together govern whether any violations of Mosseri's lease occurred and whether they terminated his tenancy, the Petition's allegation that his tenancy expired on January 26, 2019 does not necessarily raise any question of federal law.

Second, New York law governs whether Mosseri's tenancy expired because he failed to renew his lease. The termination date of Mosseri's tenancy under the lease is identified directly in the lease itself. *See* Dkt. 7-2 at 14. And the interpretation of the lease is governed by New York law. *See George Backer Mgmt. Corp.*, 385 N.E.2d at 1065. Thus, since New York law governs when the tenancy established by the lease expired, the Petition's allegation that the tenancy had expired by a particular date does not necessarily raise any federal question. Nor does the Notice to Cure's allegation that, because Mosseri "[has] refused to renew the lease as provided for by law," the tenancy expired upon the conclusion of the term specified in the lease. Notice to Cure at 2, Dkt. 52-1 at 11. The procedures for renewing a lease in a rent-stabilized apartment—such as the Premises, *see* Petition ¶ 13, Dkt. 52-1 at 7—are set forth under New York law. *See generally* N.Y. Comp. Codes R. & Regs. tit. 9, § 2523.5 (2022). Because New York law governs both when Mosseri's initial tenancy expired and whether that initial term was extended through a valid renewal, no federal question is necessarily raised by the allegation that his tenancy had expired because of his failure to renew the lease.

**2. The Existence of Mosseri's Tenancy**

The Petition's allegations concerning the remaining elements that must be proven to maintain a summary holdover proceeding likewise fail to necessarily raise any question of federal law. The Petition alleges:

> Respondent, CLEMENT MOSSERI, is the tenant of the premises, who entered into possession under a written rental agreement, dated on or about November 13, 2017, made between Respondent and Petitioner for a period of one (1) year, which commenced on November 15, 2017 and ended on November 14, 2018, and continued thereafter on a month-to-month basis.

Petition ¶ 3, Dkt. 52-1 at 6. Thus, Petitioner relies on the written rental agreement executed between itself and Mosseri to support its allegation that Mosseri is the tenant of the Premises—an allegation necessary for a summary proceeding to be maintained, *see, e.g.*, *Allied Coverage Corp.*

8

*v. N.Y. Phenomenon, Ltd.*, No. 2002-1615 W C., 2003 WL 21959985 (N.Y. App. Term July 11, 2003) (noting that "the existence of a landlord-tenant relationship . . . is a fundamental element of the petitioner's prima facie case in an RPAPL 711 proceeding" (citing, *inter alia*, *Kashner v. Kapilow*, 130 N.Y.S.2d 427, 428 (App. Div. 1954))). And no question of federal law must necessarily be raised in determining whether a written rental agreement creates a landlord-tenant relationship; instead, that question too is governed by New York state law. *See, e.g.*, *Women's Interart Ctr., Inc. v. N.Y.C. Econ. Dev. Corp.*, 944 N.Y.S.2d 137, 139-40 (App. Div. 2012) ("To determine whether the underlying agreement is a net lease or a contract for management services, its contents must be examined in order to see what interest the parties intended to pass. . . . The critical question in determining the existence of a lease establishing a landlord-tenant relationship is whether exclusive control of the premises has passed to the tenant."). Petitioner's allegation that Mosseri is its tenant therefore fails to necessarily raise any federal issue.

### 3. Mosseri's Possession Without Permission

Next, the Petition alleges that Mosseri and his alleged undertenants "continue in possession of the premises without the permission of the Petitioner-landlord." Petition ¶ 12, Dkt. 52-1 at 7. This allegation pleads a factual matter that Petitioner will seek to prove at trial. *Cf. First Nat'l City Bank v. Wall St. Leasing Corp.*, 363 N.Y.S.2d 699, 701 (Civ. Ct. 1974) (holding, in a summary proceeding for nonpayment of rent under section 711(2), that "the determination of whether the tenant is in possession or not is a factual determination" (citing *Warrin v. Haverty*, 133 N.Y.S. 959 (App. Div. 1912))). Consequently, that allegation raises no issue of law, state or federal, beyond the proper interpretation of section 711(1) itself: it must be established (or not) based directly on the application of the statutory text to the evidence produced at trial. New York courts are therefore able to find possession to be established without considering any provision of federal law. *See,*

*e.g.*, *Fishel's Est. v. Baronelli, Ltd.*, 463 N.Y.S.2d 1009, 1009 (Civ. Ct. 1983) (holding, with no reference to federal law, that a petitioner in a summary holdover proceeding had established the respondent's possession of the premises by establishing that "a fully executed copy of the lease was delivered to the tenant, accompanied by the keys").  Since possession is a factual question to be determined based on the evidence presented to the court, Petitioner's allegation that Mosseri has retained possession of the Premises without permission does not necessarily raise any question of federal law.

### 4.  Mosseri's Citations to Federal Law

In his submissions, Mosseri identifies certain provisions of federal law that, he argues, establish federal jurisdiction over this proceeding.  Because he is unrepresented by counsel, this Court construes his submissions liberally to raise the strongest arguments they suggest.  *See, e.g.*, *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).  Not even the strongest arguments suggested by those submissions, however, successfully identify any federal cause of action under which this Petition is brought or any federal issue that is necessarily raised by the Petition's claims.

First, Mosseri appears to argue that the Petition raises a federal question in virtue of the allegation that "[t]he Project is operated pursuant to the rules and regulations of the federal Low-Income Housing Tax Credit ('LIHTC') program pursuant to Section 42 of the Code."  Petition ¶ 13, Dkt. 52-1 at 8; *see* Notice of Removal ¶ 18.  This allegation does not establish that the Petition was brought under a cause of action created by federal law.  It alleges only that section 42 of the Internal Revenue Code governs the building containing the Premises, not that any provision in section 42 entitles Petitioner to the relief it seeks in the Petition.  Furthermore, the Petition does not "implicate significant federal issues," *Grable & Sons*, 545 U.S. at 312, simply by alleging that

section 42 governs the operations of that building. Federal question jurisdiction exists over a state-law cause of action only if the plaintiff's "right to relief depends upon the construction or application of [federal law]." *Grable & Sons*, 545 U.S. at 313 (alteration in original) (quoting *Smith v. Kansas City Title & Tr. Co.*, 255 U.S. 180, 199 (1921)); *see also Franchise Tax Bd.*, 463 U.S. at 28 (holding federal question jurisdiction to exist over a state-law cause of action in "only those cases in which . . . the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law"). The state-law cause of action established by section 711 does not require Petitioner to prove the allegation that the building is operated pursuant to section 42 to be entitled to the relief sought by the Petition, and therefore that allegation cannot establish federal question jurisdiction.

A colorable argument may exist that in a summary holdover proceeding to recover possession of real property that is operated pursuant to section 42 of the Internal Revenue Code, New York law requires the petition to plead that the property is so operated.[2] That pleading requirement, however, arises not because the allegation must be proven in order for the petitioner to prevail but rather because if a property's regulatory status "provided the tenant with certain potential defenses, . . . the Civil Court could not . . . properly adjudicate[] th[e] proceeding without" awareness of that status. *Volunteers of Am.-Greater N.Y., Inc. v. Almonte*, 886 N.Y.S.2d 46, 48 (App. Div. 2009). Requiring a property's regulatory status to be alleged in the petition seeking to recover possession of that property, then, ensures that the state court will be aware of any relevant

---

[2] While New York courts have held that "the need to plead rent regulatory status and compliance with the appropriate statutes and codes and to actually be in compliance therewith is necessary for a court to order the requested relief," *Villas of Forest Hills Co. v. Lumberger*, 513 N.Y.S.2d 116, 118 (App. Div. 1987), the Court is unaware of any reported case addressing whether a summary holdover petition must similarly plead that the petitioner is receiving tax credits under section 42 of the Internal Revenue Code due to its ownership and operation of the premises it seeks to repossess through the petition.

11

regulations in deciding the petition. If an allegation must be included merely to notify the respondent and the court that possible defenses may exist, yet the petitioner need not prove that allegation at trial to prevail, then the petitioner's right to relief does not "necessarily depend on resolution of" that allegation. Thus, that allegation cannot establish federal jurisdiction.

Second, Mosseri's submissions repeatedly cite to a provision of the Code of Federal Regulations that governs the procedures state housing credit agencies must follow to monitor compliance with section 42 of the Internal Revenue Code. Notice of Removal ¶¶ 9, 23-24, 28-29. That regulation provides that "the owner of a low-income housing project must be required to keep records . . . that show . . . (vii) Documentation to support each low-income tenant's income certification." 26 C.F.R. § 1.42-5(b)(1). However, the same provision allows that "[i]n the case of a tenant receiving housing assistance payments under Section 8, the documentation requirement of this paragraph (b)(1)(vii) is satisfied if the public housing authority provides a statement to the building owner declaring that the tenant's income does not exceed the applicable income limit under section 42(g)." *Id.* § 1.42-5(b)(1)(vii). Mosseri argues that in virtue of this exception he had no obligation to recertify his income. *See* Notice of Removal ¶¶ 28-29.

Regardless of the merits of this argument, however, it cannot form the basis of federal jurisdiction over this proceeding. The proper construction and application of 26 C.F.R. § 1.42-5(b)(1)(vii) is not raised necessarily by the allegations in the Petition, because Petitioner does not argue that Mosseri's tenancy was terminated due to his violation of an obligation to recertify income imposed by 26 C.F.R. § 1.42-5(b)(1)(vii). Instead, Petitioner alleges that Mosseri violated an obligation to recertify income that is imposed directly by a rider to the lease executed between Petitioner and Mosseri. *See* Notice to Cure at 1, Dkt. 52-1 at 10 ("[Y]ou have failed to comply with the annual re-certification process *as required by the Rider* . . . ." (emphasis added)); Rider

12

at 2, Dkt. 7-3 at 3 ("Tenant must . . . annually recertify Tenant's Household income prior to the commencement or renewal of the Lease's term."). Indeed, Mosseri himself acknowledges as much, as he alleges in his own Notice of Removal that "the exception for Section 8 tenants in the lease rider for recertification . . . is currently illegally omitted by landlord." Notice of Removal ¶ 30. And since Petitioner alleges that Mosseri's tenancy terminated due to his violations of a lease governed by New York law, not due to any violations of the Internal Revenue Code or the federal regulations promulgated thereunder, those allegations do not necessarily raise any question of federal law.

Mosseri's argument that 26 C.F.R. § 1.42-5(b)(1)(vii) entitles him to prevail in this case also appears to sound in preemption: liberally construed, he argues that because 26 C.F.R. § 1.42-5(b)(1)(vii) provides for a method of certifying a tenant's income different from the method required by the lease, the method of certifying income required by the lease is preempted by federal law and thus legally invalid. Notice of Removal ¶ 29 (arguing that "a Section 8 tenant certified as low income by HUD is automatically a low income tenant under LIHTC because you cannot have a different result using the same law guidelines in making that determination").[3] Under the well-pleaded complaint rule, however, it is black-letter law that federal jurisdiction exists only if a federal question is necessarily raised *by the allegations in the complaint*, and consequently that federal jurisdiction cannot be premised on the defense that provisions of state law entitling a plaintiff to relief are preempted by inconsistent provisions of federal law. *Franchise Tax Bd.*, 463 U.S. at 12 (explaining that even if "both parties admit that the only question for decision is raised

---

[3] To be sure, inasmuch as Mosseri "seeks SDNY to amend this statute" and subsequently sets forth how "26 CFR Ch. I § 1.42-5 (b), 1 (vii), should read," which differs considerably from how it is currently written, Notice of Removal ¶ 29, he does appear to recognize that the version of 26 C.F.R. § 1.42-5(b)(1)(vii) that is currently effective does not entitle him to prevail.

by a federal preemption defense . . . [the well-pleaded complaint rule] has been correctly understood to apply"). Thus, even if Mosseri could prevail in this proceeding through the defense that 26 C.F.R. § 1.42-5(b)(1)(vii) preempts the recertification requirement imposed by the lease's rider, he nonetheless could not use that defense to establish federal jurisdiction over this proceeding, since federal question jurisdiction cannot be premised on even a meritorious defense. Instead, if Mosseri does have a viable preemption argument, he must raise it in state court.

Consequently, federal question jurisdiction does not exist over this proceeding in virtue of any of the federal authorities that Mosseri identifies.

## II. Conclusion

For the foregoing reasons, this Court lacks subject matter jurisdiction over this case. The Court therefore orders that this proceeding, Index No. L&T 53774/2019, be remanded to New York City Civil Court, County of New York, Housing Part. The Clerk of Court is respectfully directed to close this case.[4] The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal of this Opinion and Order would not be taken in good faith, and therefore denies *in forma pauperis* status for purposes of appeal.

SO ORDERED.

Dated: November 4, 2022
New York, New York

_____
JOHN P. CRONAN
United States District Judge

---

[4] On October 24, 2022, Mosseri filed in this case a document titled "Notice of Removal" purporting to remove another action brought by Petitioner against him in New York City Civil Court, which is docketed with Index No. L&T 312858/2022. *See* Dkt. 64. Because that removal involved a different action than the Civil Court action that was removed in this case, which is Index No. L&T 053774/2019, Petitioner was required to commence a separate civil action to remove Index Number L&T 312858/2022. Accordingly, the Court directed the Clerk of the Court to open a new civil docket for the newly removed action and to transfer the October 24, 2022 "Notice of Removal" thereto. Dkt. 65. This Opinion and Order therefore resolves the instant case, *7 West 21 LI LLC v. Moseri*, No. 20 Civ. 279 (JPC) (S.D.N.Y.).